UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 01191

CREDIT-BASED ASSET SERVICING AND
SECURITIZATION LLC

ECF CASE

       Plaintiff,

Civ. No.

-against-

ALLSTATE HOME LOANS, INC.

       Defendant.

COMPLAINT

    Plaintiff Credit-Based Asset Servicing and Securitization LLC ("C-BASS" or "Plaintiff"), by its attorneys, Thacher Proffitt & Wood LLP, for its complaint against defendant Allstate Home Loans, Inc. ("Defendant") (collectively, the "Parties") alleges as follows:

### JURISDICTION AND VENUE

  1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

  2.  Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2).

### THE PARTIES

  3.  Plaintiff C-BASS is a limited liability company organized and existing under the laws of the State of Delaware. C-BASS maintains its principal place of business at 335 Madison Avenue, New York, New York.

  4.  Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of California, and maintains its principal place of business at 5 Corporate Park, Suite 100, Irvine, California.

## FACTUAL ALLEGATIONS

### The Master Mortgage Loan Purchase Agreement and Related Term Sheet Agreements

5.  On or about May 1, 2004, C-BASS and Defendant entered into a Master Mortgage Loan Purchase Agreement (the "Purchase Agreement"). A copy of the Purchase Agreement is attached hereto as Exhibit 1. Exhibit 1 is hereby incorporated herein as if fully set forth.

6.  In connection with individual transactions between the Parties pursuant to the Purchase Agreement, C-BASS and Defendant also entered into Term Sheet[1] agreements dated June 3, 2004, November 24, 2004, December 8, 2004, November 17, 2005, February 24, 2006, June 8, 2006, October 11, 2006 and November 1, 2006 (collectively, the "Term Sheet Agreements," and together with the Purchase Agreement, the "Agreements").

7.  As set forth in Section 16 of the Purchase Agreement, the Parties agreed that the Agreements "shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, excluding conflict of laws issues...."

8.  As set forth in Section 16 of the Purchase Agreement, the Parties agreed that all disputes arising under the Agreements shall be submitted to, and the Parties subject themselves to, the jurisdiction of the courts of competent jurisdiction, state and federal, in the State of New York.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreements.

**Defendant's Failure to Repurchase**
**Loans With Early Payment Defaults From C-BASS**

9. Pursuant to the Agreements, Defendant from time to time offered to sell and C-BASS agreed to purchase certain mortgage loans ("Mortgage Loans") in accordance with the terms of the Agreements.

10. Pursuant to Section 5(f) of the Purchase Agreement, as amended, Defendant agreed to repurchase any Mortgage Loan for which the first scheduled monthly payment due following the Closing Date for such Mortgage Loan was not received by C-BASS by the last day of the month when such payment was due (hereafter "Early Payment Defaults").

11. Certain of the Mortgage Loans experienced Early Payment Defaults (hereafter, such Mortgage Loans shall be collectively referred to as "Early Payment Default Loans"). Attached as Exhibit 2 is a schedule which lists, among other things, the Early Payment Default Loans, which is hereby incorporated herein as if fully set forth.

12. Accordingly, pursuant to Section 5(f) of the Purchase Agreement, Defendant is obligated to repurchase each Early Payment Default Loan and remit to C-BASS the Repurchase Price (as defined in the Agreements) with respect to each Early Payment Default Loan.

13. On April 19, 2007, C-BASS issued a written demand to Defendant to repurchase the Early Payment Default Loans for a sum equal to the Repurchase Price on or before April 30, 2007 (the "Demand Letter"). A copy of the Demand Letter is attached hereto as Exhibit 3, which is hereby incorporated herein as if fully set forth.

14. In addition, prior to C-BASS's issuance of the Demand Letter, C-BASS also notified Defendant via other communications that certain Mortgage Loans, including the Early Payment Default Loans, were in early payment default status. In addition to the Demand Letter,

these notifications separately triggered Defendant's obligations to repurchase such Early Payment Default Loans, pursuant to the Agreements.

15. To date, Defendant has failed to repurchase the Early Payment Default Loans from C-BASS, notwithstanding its clear contractual obligation to do so.

16. The aggregate Repurchase Price for the Early Payment Default Loans, excluding attorneys' fees and other costs and expenses, exceeds $1,766,010.29 as of January 31, 2008, plus interest.

17. C-BASS has performed all of its obligations under the Agreements with respect to the Early Payment Default Loans.

18. As a result of Defendant's failure to repurchase the Early Payment Default Loans, C-BASS is required to maintain possession and maintenance of the Early Payment Default Loans, and may be exposed to any claims or losses that might be sustained by reason of ownership of each such loan.

**Defendant's Failure to Make Premium Protection Payments to C-BASS**

19. Pursuant to Section 5(f) of the Purchase Agreement, as amended, Defendant agreed to pay C-BASS certain amounts constituting premium protection payments in the event that the principal due on a Mortgage Loan was prepaid in full within one year of the Cut-off Date as specified on the related Term Sheet.

20. The principal on certain Mortgage Loans was prepaid in full within one year of the relevant Cut-Off Date. Attached as Exhibit 2 is a schedule which lists, among other things, those Mortgage Loans with principal amounts paid in full within one year of the Cut-off Date, which is hereby incorporated herein as if fully set forth.

21. Accordingly, pursuant to Section 5(f) of the Purchase Agreement, Defendant is obligated to pay to C-BASS certain premium protection payments, the aggregate amount of which, excluding attorneys' fees and other costs and expenses, exceeds $22,078.32 as of January 31, 2008, plus interest.

### Defendant's Failure to Reimburse C-BASS for Out-of-Pocket Expenses

22. Pursuant to Sections 5(e) and 5(f) of the Purchase Agreement, as amended, in the event that Defendant is obligated to repurchase the Mortgage Loans, C-BASS is also entitled to recover from Defendant certain out-of-pocket expenses incurred by C-BASS in "transferring and servicing such Mortgage Loan[s], including, without limitation, expenses incurred for maintenance and repairs, assessments, taxes and similar items, to the extent not paid out of an escrow account transferred by [Defendant] to" C-BASS.

23. Defendant has failed to remit payment for C-BASS's out-of-pocket expenses despite the fact that Defendant is obligated to repurchase the Mortgage Loans and C-BASS is therefore entitled to recover these amounts.

24. Among the expenses that C-BASS has incurred and Defendant is now obligated to pay are amounts for certain delinquent local taxes that Defendant was obligated to, and failed to, pay. Attached as Exhibit 2 is a schedule which lists, among other things, those tax payments, which is hereby incorporated herein as if fully set forth

25. The aggregate amount of tax expenses owing from Defendant to C-BASS, excluding attorneys' fees and other costs and expenses, exceeds $6,605.68 as of January 31, 2008, plus interest.

**Defendant's Failure to Remit Funds Received and Held in Escrow**

26. Under the Agreements, Defendant was obligated to hold certain funds belonging to C-BASS in escrow and to remit these funds to C-BASS when they became due and owing.

27. Defendant has refused to remit these funds that are to due and owing to C-BASS despite numerous requests for payment thereof by C-BASS.

28. The aggregate amount of funds received by Defendant and improperly withheld from C-BASS, excluding attorneys' fees and other costs and expenses, exceeds $270,396.06 as of January 31, 2008, plus interest.

29. Included in this amount are outstanding escrow and P&I funds in the amount of $265,007.54 which are due and owing to C-BASS, and which Defendant continues to improperly withhold.

**Indemnification and Attorneys' Fees and Costs**

30. Defendant is liable for C-BASS's attorneys fees and expenses incurred in connection with the Early Payment Default Loans and this lawsuit because:

   A. Pursuant to Sections 5(e) and 5(f) of the Purchase Agreement, the Early Payment Default Loans shall be repurchased at the "Repurchase Price" which includes, among other things, attorneys fees and expenses incurred by Purchaser in connection with any enforcement procedures or otherwise with respect to the Mortgage Loans; and

   B. Pursuant to Section 19 of the Purchase Agreement, Defendant agreed to indemnify C-BASS for any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments and any other costs, fees and expenses that C-BASS may sustain resulting from Defendant's breach of a representation, warranty or covenant contained within the Agreements.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract - Agreements)

31. Plaintiff C-BASS realleges paragraphs 1 through 30 of this complaint as if fully set forth herein.

32. Under the Agreements, Defendant agreed to repurchase the Early Payment Default Loans from C-BASS.

33. C-BASS has demanded that Defendant repurchase the Early Payment Default Loans.

34. Defendant has refused and failed to repurchase the Early Payment Default Loans.

35. As a direct, proximate and actual result of Defendant's breach of its obligations to repurchase the Early Payment Default Loans, C-BASS has suffered damages in an amount to be determined at trial, but which is not less than $1,766,010.29 as of January 31, 2008, plus interest.

36. In addition, under the Agreements, Defendant agreed to make premium protection payments to C-BASS in the event that the principal due on a Mortgage Loan was prepaid in full within one year of the Cut-off Date as specified on the related Term Sheet.

37. C-BASS has demanded that Defendant make premium protection payments on Mortgage Loans with principal amounts that were prepaid in full within one year of the Cut-off Date.

38. Defendant has refused and failed to make premium protection payments to C-BASS.

39. As a direct, proximate and actual result of Defendant's breach of its obligations to make premium protection payments, C-BASS has suffered damages in an amount to be determined at trial, but which is not less than $22,078.32 as of January 31, 2008, plus interest.

40. Defendant also agreed to hold certain funds belonging to C-BASS in escrow and to remit these funds to C-BASS when they became due and owing.

41. Defendant has refused to remit these funds that are to due and owing to C-BASS despite numerous requests for payment thereof by C-BASS.

42. The aggregate amount of funds received by Defendant and improperly withheld from C-BASS, excluding attorneys' fees and other costs and expenses, exceeds $270,396.06 as of January 31, 2008, plus interest.

43. Defendant has further refused to pay certain out-of-pocket expenses incurred by C-BASS despite its obligation to do so under the Agreements.

44. As a direct, proximate and actual result of Defendant's breach of its obligations to repay C-BASS's expenses, C-BASS has suffered damages in an amount to be determined at trial, but which is not less than $6,605.68 as of January 31, 2008, plus interest.

45. In total, as a direct, proximate and actual result of Defendant's breach of its obligations under the Agreements, C-BASS has suffered damages in an amount to be determined at trial, but which is not less than $2,065,090.35 as of January 31, 2008, plus interest.

## SECOND CLAIM FOR RELIEF
(Unjust Enrichment)

46. Plaintiff C-BASS realleges paragraphs 1 through 45 of this complaint as if fully set forth herein.

47. In consideration of the sale of the Early Payment Default Loans, Defendant received payment from C-BASS.

48. Defendant has wrongfully refused to repurchase the Early Payment Default Loans, causing C-BASS to lose the use of those moneys due and owing, and requiring C-BASS

to incur attorneys' fees to recover these costs due under the Agreements. It would be unjust and inequitable to allow Defendant to benefit in this manner.

49. By reason of the foregoing, Defendant has been unjustly enriched at the expense of C-BASS, and C-BASS has suffered damages in an amount to be established at trial.

### THIRD CLAIM FOR RELIEF
(Conversion)

50. Plaintiff C-BASS realleges paragraphs 1 through 49 of this complaint as if fully set forth herein.

51. Under the Agreements, Defendant was obligated to hold certain funds belonging to C-BASS in escrow and to remit these funds to C-BASS when they became due and owing.

52. Defendant has refused to remit these funds that are to due and owing to C-BASS despite numerous requests for payment thereof by C-BASS.

53. Upon information and belief, a branch manager of Allstate assumed control of and misappropriated these funds for his or her own benefit in a manner inconsistent with the terms of the Agreements.

54. By failing to remit these funds, Defendant and/or its agent(s) have improperly converted funds belonging to C-BASS for the personal benefit of Defendant and/or its agent(s).

55. By reason of the foregoing, C-BASS has suffered and continues to suffer damages in an amount to be established at trial.

### FOURTH CLAIM FOR RELIEF
(Indemnification for Legal Fees and Related Costs)

56. Plaintiff C-BASS realleges paragraphs 1 through 55 of this complaint as if fully set forth herein.

57. Pursuant to Section 19 of the Purchase Agreement, Defendant agreed to indemnify C-BASS for any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that C-BASS may sustain that are in any way related to Defendant's breach of Defendant's representations, warranties or covenants in strict compliance with the terms of the Purchase Agreement.

58. Defendant has breached its representations and warranties and failed to observe its covenants, causing C-BASS to suffer the damages for which Defendant owes indemnity.

59. Pursuant to Sections 5(e) and 5(f) of the Purchase Agreement, the Early Payment Default Loans shall be repurchased at the "Repurchase Price" which includes, among other things attorneys fees and expenses incurred by Purchaser in connection with any enforcement proceedings or otherwise with respect to the Mortgage Loans.

60. Defendant is therefore liable to C-BASS for all of C-BASS's legal fees and related costs, and all other costs, fees and expenses that C-BASS has incurred, is incurring and will incur in connection with Defendant's failure to observe and perform its obligation to repurchase the Early Payment Default Loans.

### FIFTH CLAIM FOR RELIEF
(Specific Performance)

61. Plaintiff C-BASS realleges paragraphs 1 through 60 of this complaint as if fully set forth herein.

62. The Agreements are valid, enforceable contracts between Defendant and C-BASS.

63. Under the terms of the Agreements, C-BASS and Defendant made several valid and enforceable mutual agreements.

64. C-BASS substantially performed its obligations under the Agreements by, *inter alia,* purchasing Early Payment Default Loans from Defendant pursuant to the terms and provisions of the Agreements.

65. C-BASS is willing and able to perform its obligations under the Agreements by, including but not limited to, delivering repurchased Early Payment Default Loans to Defendant.

66. Upon information and belief, Defendant is able to continue to perform under the Agreements, including but not limited to, repurchasing the Early Payment Default Loans.

67. C-BASS has suffered harm resulting from Defendant's refusal to repurchase the Early Payment Default Loans, for which there is no adequate remedy at law.

68. C-BASS has demanded, and is entitled to, specific performance of Defendant's repurchase obligations under the Agreements.

69. As a result of the foregoing breaches, pursuant to the Agreements, Defendant is obligated to pay C-BASS an amount not less than $2,065,090.35 as of January 31, 2008, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff C-BASS respectfully requests judgment against Defendant as follows:

A. Damages in an amount to be determined at trial but not less than $2,065,090.35;

B. Specific performance of the Agreements;

C. Attorneys' fees and related costs, and all other costs, fees and expenses that C-BASS has incurred, is incurring and will incur in this action in connection with Defendant's failure to observe and perform its obligations under the Agreements; and

D. Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
February 5, 2008

        THACHER PROFFITT & WOOD LLP

By: _____

John P. Doherty (jdoherty@tpw.com)
Brendan E. Zahner (bzahner@tpw.com)
Two World Financial Center
New York, New York 10281
(212) 912-7400

*Attorneys for Credit-Based Asset*
*Servicing and Securitization, LLC*